IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL DEGIDIO                          :
       Plaintiff,

                                 CIVIL ACTION
    v.                                   :       NO. 11-1353

CENTRO PROPERTIES, LLC
       Defendant.                       :

**MEMORANDUM**

**Jones, II   J.**                                                     **February 4, 2013**

## I.      Introduction

Plaintiff Michael Degidio brings the within action on the basis that Defendant Centro

Properties engaged in unlawful retaliation and created a hostile work environment after receiving

his complaints of gender discrimination in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e-3(a) (Count I) and Section 5(d) of the Pennsylvania Human

Relations Act ("PHRA"), 43 P.S. § 955(d) (Count II).  Additionally, Plaintiff  brings a claim

under Pennsylvania law for Intentional Infliction of Emotional Distress (Count III).

For the reasons that follow, Defendant's Motion shall be granted.

## II.     Background

Defendant is a business headquartered in New York, New York, with offices across the

United States, including Conshohocken, Pennsylvania.  (Am. Compl. ¶ 2).  In February 1999,

Defendant hired Plaintiff as a full-time employee at its Conshohocken office.  (Am. Compl. ¶

12).  Plaintiff was thereafter promoted to Vice President of Property Management and held the

position until he resigned on October 14, 2009. (*Id.*).

During his tenure, Plaintiff directly supervised a female employee ("NF"), whom he eventually discovered was having a romantic affair with his male supervisor ("BB"). (Am. Compl. ¶ 14). Plaintiff alleges as a result of NF's affair with BB and the romantic "favoritism" she allegedly received, NF failed to follow Plaintiff's supervisory directives and would continually ignore him. (Am. Compl. ¶ 16). When Plaintiff complained to BB about NF's "unprofessional attitude" and "insubordination," and gave NF a negative review, BB was allegedly dismissive and insisted that NF's review be upgraded to "performing adequately." (Am. Compl. ¶¶ 16-17). On June 30, 2008, Plaintiff contacted his New York office supervisor, Mike Carroll, about the alleged affair between BB and NF, their unprofessional office behavior, and the effect it was having on his work environment. Mr. Carroll instructed Plaintiff to contact Human Resources about the matter. (Am. Compl. ¶ 18).

On July 2, 2008, Plaintiff followed Mr. Carroll's directive and contacted Human Resources to report NF's behavior, the "favoritism" given to NF, and the "hostile work environment *it* was creating." (Am. Compl.. ¶¶ 19-20) (emphasis added). After making these complaints, Plaintiff claims that he was retaliated against and the "already hostile work environment worsened." (Am. Compl. ¶ 20). Specifically, Plaintiff alleges that NF's behavior escalated in ways that made it impossible for Plaintiff to supervise his staff and perform his job by reason of the following:

- NF made derogatory comments to Plaintiff and his co-workers that "he was on thin ice" and "would not be manager for much longer." (Am. Compl. ¶ 21);

- • NF asserted that she would "ensure" that all of Plaintiff's decisions "would be overturned." (*Id.*); and

- • NF released some of Plaintiff's "personal information." (*Id.*).

On September 12, 2008, Plaintiff contacted Human Resources again to report both the affair and the allegedly hostile work environment that BB and NF created by reason of same. (Am. Compl. ¶ 22). Following an investigation of Plaintiff's charges, Defendant terminated NF on October 3, 2008. (Am. Compl. ¶ 23). Thereafter, BB allegedly began removing Plaintiff's managerial responsibilities and decision-making authority within the department. (Am. Compl ¶ 24). On August 20, 2009, BB gave Plaintiff his first and only negative performance review of "needs some improvement," which BB subsequently upgraded. (Am. Compl. ¶¶ 27-29).

In September 2009, Plaintiff forwarded emails between BB and NF to Human Resources, to show that NF had instructed BB to both remove Plaintiff's job responsibilities and pressure the upgrade of her performance review. (Am. Compl. ¶ 26). After Human Resources received this information, Plaintiff claims he was subjected to further "retaliation" when BB "was no longer allowed to attend [a] meeting which he had controlled in the past," and "was constantly questioned about his whereabouts, vacation time." (Am. Compl. ¶¶ 26, 30).

Plaintiff asserts that the alleged conduct created such a "hostile work environment" that he was forced to resign, and was therefore constructively discharged on October 14, 2009. (Am. Compl. ¶ 30). Upon Plaintiff's resignation, BB allegedly stated "Mike, I wanted you to know it was Nikki (NF) who wanted you out, but there was nothing I can do. You cannot blame me for being a 63 year old and being flattered by a 30 something year old." (Am. Compl. ¶ 31).

On February 25, 2011, Plaintiff filed his initial Complaint with this Court, prompting Defendant to file a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Instead of opposing the motion, Plaintiff filed an Amended Complaint. Plaintiff's Amended Complaint adds allegations about BB's "pattern of affairs" (Am. Compl. ¶ 15) and changes Plaintiff's initial claim alleging he "engaged in a protected activity when he reported the hostile work environment created by *the affair*," to instead plead "created by *the pervasive gender discrimination.*" (Compl. ¶ 19; Am. Compl. ¶ 20) (emphasis added).[1]

### III.   Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable of the alleged misconduct." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("All civil complaints must contain more than an unadorned the-defendant-unlawfully-harmed-me accusation."). Moreover, "the factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of

---

[1] This distinction is noted purely for purposes of supplementing this Court's ultimate conclusion that any further amendment of Plaintiff's federal claim would be futile.

notice of claim which is contemplated by Rule 8 [of the Federal Rules of Civil Procedure]."

*Villegas v. Weinstein & Riley, P.S.*, 723 F. Supp. 2d 755, 756 (M.D. Pa. 2010) (quoting *Phillips*, 515 F.3d at 232).

## IV. Discussion

### a. Title VII

#### I. Gender Discrimination

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a). Title VII claims are analyzed via the familiar *McDonnell Douglas* burden-shifting framework. *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999). Under this standard, a plaintiff must first establish a prima facie case of discrimination by showing: (1) s/he is a member of a protected class; (2) s/he is qualified for the position; (3) s/he suffered an adverse employment action; and (4) the action was taken under circumstances that give rise to an inference of unlawful discrimination. *Jones*, 198 F.3d at 410-11 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If a plaintiff is successful, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Once a legitimate reason for the employment action is presented, the burden shifts back to the plaintiff to show that the employer's proffered reason was in fact pretext for gender discrimination. *Id.* at 804.

In cases alleging "reverse discrimination," where a non-protected class is the target of the alleged discrimination, the Third Circuit removes the first prong of the prima facie analysis. *See*

*Iadimarco v. Runyon*, 190 F3d. 151, 157-58 (3d Cir. 1999) ("[A] plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of [his] . . . sex . . . .'"). Therefore, to establish a prima facie "reverse discrimination" case, a "plaintiff must ultimately show: (1) he or she was qualified for the position in question, (2) he or she suffered an adverse employment action, and (3) the evidence is adequate to create an inference that the adverse employment action [or less favorable treatment] was based on a trait protected by Title VII." *Warenecki v. City of Philadelphia*, 10-CV-1450, 2010 U.S. Dist. LEXIS 116912, at *13-14 (E.D. Pa. Nov. 3, 2010).

Plaintiff herein has adequately alleged that he was qualified for the position. (Am. Compl. ¶¶ 13, 29). With regard to an "adverse employment action," the same has been defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Under certain circumstances, constructive discharge may constitute an adverse employment action. When assessing a claim of constructive discharge such as the one presented by Plaintiff, an objective test is employed, in which "a court must determine 'whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign.'" *Duffy v. Paper Magic Group,* 265 F.3d 163, 169 (3d Cir. 2001) (quoting *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 (3d Cir. 1998)). Merely "stressful and frustrating" conduct is insufficient to withstand objective scrutiny. *Id.; see also Clegg v.*

6

*Falcon Plastics, Inc.,* 174 F. App'x 18, 27 (3d Cir. 2006) (finding factors such as the absence of threats of discharge by the employer, the absence of any urging or suggestion by employer for employee to resign or retire, the non-existence of a demotion or reduction in pay or benefits, the absence of an involuntarily transfer to a less desirable position, or the absence of unsatisfactory job evaluations, objectively demonstrates that there was no constructive discharge); *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1083 (3d Cir. 1992) ("[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work . . . [t]hey cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting.").

Plaintiff in this case alleges that "NF" made comments to Plaintiff and their co-workers that he "would not be manager for much longer" and "was on thin ice." (Am. Compl. ¶ 21). However, Plaintiff makes no allegation of any reduction in pay or benefits, or of an involuntary transfer to a less desirable position. Plaintiff's allegations that he could not attend a meeting that "he had controlled in the past" and that he was questioned about his whereabouts and vacation time, do not - under any objective assessment - rise to the level of "so unpleasant or difficult that a reasonable person would feel compelled to resign." Although Plaintiff does cite to one performance evaluation that indicated "needs some improvement," he concedes that said evaluation was subsequently changed to reflect a positive review. (Am. Compl. ¶ 29). As such, Plaintiff's allegation that "[he] knew that receipt of a 'needs some improvement' review was the initial step in Plaintiff's removal of an employee" is a moot point. (Am. Compl. ¶ 28).

In view of the foregoing, Plaintiff has failed to provide a sufficient basis upon which to infer constructive discharge and in turn, has failed to demonstrate the potential existence of an adverse employment action, as is required to sustain a gender discrimination claim under Title VII.[2]

## ii. Retaliation

Count I of Plaintiff's Amended Complaint further alleges that Defendant violated Title VII by retaliating against Plaintiff for complaining about "pervasive gender discrimination" and the "hostile work environment that arose from BB's continuing pattern of favoritism toward female employees to the determent of similarly situated male employees." (Am. Compl. ¶ 37). In order to sufficiently plead a case of unlawful retaliation, a plaintiff must present facts that could

---

[2] Because Plaintiff has failed to demonstrate that an inference of constructive discharge could be made, his claim of gender discrimination similarly fails with regard to the third factor, which pertains to said *adverse employment action* being based upon a trait protected by Title VII. Aside from the fact that there was no adverse employment action, there exists no allegation in Plaintiff's Amended Complaint that he ever complained to his employer *about gender discrimination*. Instead, Plaintiff merely complained about his dissatisfaction with the apparent existence of a romantic affair in the workplace. *See Am. Compl.* ¶ 14 (Plaintiff raised objections to the favoritism begin [sic] provided to NF as a result of the affair she was having with Plaintiff's direct supervisor BB. Plaintiff engaged in the protected behavior of complaining about quid pro quo favoritism/the hostile work environment which prevented him from performing his job and disciplining and controlling the work of NF."); *Am. Compl.* ¶ 16 ("Plaintiff objected to the favoritism being given to NF as a result of the affair. NF failed to follow Plaintiff's directives and ignored Plaintiff, who made numerous complaints about NF's unprofessional attitude and insubordination in the office to his supervisor BB."); *Am. Compl.* ¶ 18 ("On June 30, 2008, Plaintiff contacted Mike Carroll, Plaintiff's supervisor who worked in the Defendant's New York office, regarding NF's relationship with his supervisor, the unprofessional behavior in the officer and their effect on Plaintiff's working environment and Plaintiff's subordinates."); *Am. Compl.* ¶ 19 ("On July 2, 2008, Plaintiff contacted Human Resources regarding NF's behavior and the hostile work environment it was creating."); *Am. Compl.* ¶ 22 ("On September 12, 2008, Plaintiff contacted Human Resources in Respondent's New York office. Again, Plaintiff expressed his concern over the affair and the hostile work environment BB and NF had created.").

establish: (1) he engaged in an activity protected by Title VII; (2) the employer took a "materially adverse" employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *See Hare v. Potter*, 220 F. App'x 120, 128 (3d Cir. 2007); *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)(citing *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 201 (3d Cir. 1994)). [3]

To satisfy the first element of a Title VII retaliation claim, a plaintiff must report an unlawful practice prohibited by the applicable statute. *Omogbehin v. Cino*, 485 F. App'x 606, 611 (3d Cir. 2012). "[O]nly complaints about discrimination prohibited by Title VII - that is, discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2 - constitute 'protected activity.'" *Davis v. City of Newark*, 417 F. App'x 201, 203 (3d Cir. 2011) (citing *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)). Moreover, complaints about unlawful discriminatory practices are a "protected activity" only if they are communicated directly to the employer and "specific enough to notify management of the particular type of discrimination at issue." *Sanchez v. Sungard Availability Servs., LP*, 362 F. App'x 283, 288 (3d Cir. 2010) (citing *Barber*, 68 F.3d at 702); *see also Perry v. Harvey*, 332 F. App'x 728, 733 (3d Cir. 2009) (requiring that internal complaints about unlawful discrimination not be equivocal or vague). By contrast, general complaints about unfairness, favoritism, or preferential treatment based on a consensual romantic relationship between a supervisor and employee are not protected because they do not directly implicate illegal or discriminatory

---

[3] A plaintiff can show that his employer's conduct was "materially adverse" by demonstrating that it is "likely to deter victims of discrimination from complaining to the EEOC." *Hare*, 220 F. App'x at 128 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006)).

conduct under Title VII. *See Barber*, 68 F.3d at 702; *see also Miller v. Aluminum Co. of Am.*, 679 F. Supp. 495, 501 (W.D. Pa. 1988) ("[P]referential treatment on the basis of a consensual romantic relationship between a supervisor and an employee is not gender-based discrimination . . . Favoritism and unfair treatment, unless based on a prohibited classification, do not violate Title VII.") (citations omitted). Such complaints "[will] not translate into a charge of illegal [] discrimination," even where an employee *knows* it exists, unless the reports specifically communicate plaintiff's belief that discrimination occurred *because of* a prohibited classification. *See Barber*, 68 F.3d at 702; *Gharzouzi v. Northwestern Human Servs. of Pa.*, 225 F.Supp. 2d 514, 540 (E.D. Pa. 2002) ("The complaint must specifically mention the plaintiff's belief that he/she was discriminated against on account of his/her membership in some protected class."). Consequently, it is "the objective message conveyed [by the employee], not the subjective intent of the person sending the message" that determines whether plaintiff has sufficiently opposed discrimination. *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 137 (3d Cir. 2006); *see also Barber*, 68 F.3d at 702 ("[The court's] analysis requires only that [it] analyze the message that [the employee] conveyed . . . ."; *Senador v. Zober Indus., Inc.*, 07-CV-4144, 2009 U.S. Dist. LEXIS 36059, at *32 (E.D. Pa. Apr. 28, 2009) ("The complaint must 'explicitly or implicitly allege that [plaintiff's protected class status] was the reason for the alleged unfairness.' In determining whether plaintiff has engaged in opposition conduct, [the court] must look to the message being conveyed rather than to the means of conveyance.") (internal citations omitted).

Plaintiff's Title VII retaliation claim fails to satisfy the first element set forth above because the factual allegations set forth in the Amended Complaint do not demonstrate that

Plaintiff engaged in a "protected activity" under Title VII. Instead, Plaintiff's claims are based entirely upon his alleged complaints to Mike Carroll and Human Resources,[4] which he contends led to his subsequent mistreatment and constructive discharge. The *claimed* "protected activity" set forth in Plaintiff's Amended Complaint is opposition to gender-based discrimination and the allegedly hostile work environment arising out of BB's continued sexual favoritism toward female employees. The pleadings, however, fail to indicate that Plaintiff actually reported his beliefs about the purportedly "pervasive gender discrimination" or BB's "pattern of affairs" that placed males at a distinct disadvantage when he complained to Mike Carroll or Human Resources. Instead, the facts alleged distinctly show that Plaintiff only complained about BB's affair with NF, about the favoritism she *alone* received, and about the adverse work environment that *their particular relationship* created.[5]

The law is clear that preferential treatment of a "paramour" based on a consensual romantic relationship alone is not unlawful gender-based discrimination because such favoritism, while unfair, disadvantages *both* sexes in favor of the "paramour." *Miller*, 679 F.Supp. at 501 (holding that preferential treatment based on a supervisor's affair with subordinate is not gender-

---

[4] Complaints dated June 30, 2008 (Mike Carroll); July 2, 2008 (Human Resources); September 12, 2008 (Human Resources); and September 2009 (emails to Human Resources).

[5] *See* Am. Compl. ¶ 14 ("Plaintiff raised objections to *favoritism being provided to NF* as a result of the affair she was having with . . . BB.") (emphasis added); *Id.* at ¶ 16 ("Plaintiff objected to the *favoritism being given to NF* as a result of *the affair*.") (emphasis added); *Id.* at ¶ 18 ("On June 30, 2008, Plaintiff contacted Mike Carroll . . . regarding *NF's relationship* with his supervisor, their unprofessional behavior in the office and their effect on Plaintiff's working environment.") (emphasis added); *Id.* at ¶ 19 ("On July 2, 2008, Plaintiff contacted Human Resources regarding *NF's behavior* and the hostile work environment *it* was creating.") (emphasis added); *Id.* at ¶ 22 ("Plaintiff expressed his concern over *the affair* and the hostile work environment *BB and NF had created*.") (emphasis added); *Id.* at ¶ 26 ("Plaintiff sent Human Resources emails between BB and NF . . .").

based discrimination) (citing *DeCintio v. Westchester County Medical Center*, 807 F.2d 304 (2d Cir. 1986) (holding that Title VII does not prohibit discrimination in favor of the boss's lover)); *accord Handley v. Phillips,* 715 F.Supp. 657, 675 (M.D. Pa. 1989) ("[D]issimilar treatment resulting from Defendant['s] . . . alleged desire to promote another female to whom he is romantically linked is not the basis for a Title VII claim."). *See also Robuck v. Mine Safety Appliances Co.*, 10-CV-00763, 2010 U.S. Dist. LEXIS 116871, at \*17-19 (W.D. Pa. Nov. 3, 2010) (finding that a plaintiff's Amended Complaint was devoid of any facts to demonstrate that he complained of gender discrimination to his employer and that his "generalized complaints of unfairness" including allegations that his employer "always gave priority" to a female co-worker over him, "do not and cannot constitute protected activity.") (citations omitted); *Baird v. Outlook Pointe*, 07-CV-1580, 2008 U.S. Dist. LEXIS 71458, at \*45-46 (M.D. Pa. Sept. 17, 2008) (noting that although a plaintiff may be "frustrated with some of her supervisors and co-workers, and frequently voiced concerns about favoritism, nepotism, interpersonal conflicts, a perceived lack of respect, and others' lack of diligence . . . Title VII . . . 'does not set forth a general civility code for the American workplace,' and does not mandate a happy, pleasant, or stress-free work environment. Title VII prohibits discrimination on the basis of race, gender, ethnicity, or religion and retaliation based on an employee's opposition to such discrimination.") (citations omitted). Accordingly, the allegations as set forth in Plaintiff's Amended Complaint regarding one romantic relationship between two co-workers, does not make for a gender-based Title VII claim.

Focusing on the objective "message" actually conveyed to management in this case, the pleadings show that Plaintiff only notified Defendant about gender-neutral conduct because his complaints rested entirely on BB's *single* affair with NF. Plaintiff never expressed any belief to

Defendant that he or other men were subject to repeated unfair treatment *based on gender*.

Nevertheless, Plaintiff argues that his reports about the affair, favoritism, and resulting work environment notified Defendant of unlawful practices because (1) they "flow[ed] directly from" BB's "pervasive gender discrimination" and (2) the pleadings established "pervasive gender discrimination" by alleging BB's pattern of affairs and continued favoritism toward female subordinates to the detriment of their male counterparts. (Pl.'s Opp'n at 11-12).[6] Not only does this argument mischaracterize the threshold requirement for a retaliation claim, but Plaintiff also appears to conflate the allegations pled in his Amended Complaint with the complaints he actually *communicated* to Mike Carroll and Human Resources (which are the proper subject of his retaliation claims). Simply pleading the existence of potentially unlawful practices *alone* does not establish a "protected activity." Rather, it is the substance of the objective communication to the employer that defines the "protected activity" and remains the hallmark of a retaliation claim.[7] Therefore, at a minimum, Plaintiff must have pled that he *reported* or

---

[6] Plaintiff relies on the holding in *Hopson v. Dollar Bank*, 994 F. Supp. 332 (W.D. Pa. 1997) in support of his retaliation claim on the basis of gender discrimination. However, the text cited by Plaintiff in his Opposition Brief (Pl.'s Opp'n at 9) pertains to a motion for summary judgment regarding Hopson's *constructive discharge* claim based on sex discrimination, where the relevant inquiry was whether the sexual discrimination was of such an intolerable nature that a reasonable person in the employee's position may have resigned. *Id.* at 340. Although the *Hopson* court found genuine issues of material fact for the constructive discharge claim, they dismissed the plaintiff's *retaliation* claim, concluding in pertinent part that it was "fatally deficient" because "Hopson did not state that he believed, *at that time*, that a consensual affair between co-workers violated the dictates of Title VII and/or the PHRA." *Id.* at 342 (emphasis added).

[7] Plaintiff's allegations regarding the messages he communicated to Defendant are wholly distinguishable from the conclusory statements Plaintiff makes about those communications. Specifically, the Amended Complaint alleges direct communications with Mike Carroll and Human Resources about the affair with NF, favoritism toward NF, and its effect on Plaintiff's workplace. (Am. Compl. ¶¶ 18-19). Then, Plaintiff (referring back to those

*communicated* his belief about the alleged gender discrimination or pattern of affairs/female

favoritism placing males at a distinct disadvantage. As noted above, the facts contained within

Plaintiff's Amended Complaint do nothing more than demonstrate that Plaintiff objectively

conveyed his opposition to the *single* affair with NF and the "hostile" work environment created

by that *particular* relationship. Because this alone is insufficient to communicate a subjective

belief about gender discrimination, any retaliatory acts Plaintiff claims to have suffered as a

result of his opposition were not a reaction to a "protected activity" and, thus, not actionable

under Title VII.

Giving Plaintiff the benefit of every inference, his retaliation claim fails.[8]

### iii. Hostile Work Environment

Part and parcel of Plaintiff's retaliation claim, is his assertion that the aforementioned

conduct of NF and BB made for a hostile work environment, which ultimately led to his

resignation. In order to demonstrate the existence of a hostile work environment, a plaintiff must

establish that: "(1) the employee suffered intentional discrimination because of [his or her] sex,

---

communications in ¶¶ 18-19) summarily concludes that he "engaged in a protected activity when he reported the hostile work environment created by the pervasive gender discrimination" (Am. Compl. ¶ 20) without alleging any additional facts to support this legal conclusion. This is the exact type of label and conclusory assertion that *Iqbal* counsels against. 556 U.S. at 662; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (holding that a court need not credit "bald assertions" or "legal conclusions' in the complaint when deciding a motion to dismiss). Also - although not determinative of the issue now at bar - the fact that Plaintiff specifically amended his initial Complaint to replace "reported the hostile work environment created by *the affair*" with the new label of "*pervasive gender discrimination*" (Am. Compl. ¶ 20), only serves to further underscore the conclusory nature of these assertions.

[8] As already concluded, Plaintiff has failed to state a valid constructive discharge claim. Therefore, he is necessarily precluded from establishing that he suffered an adverse action by Defendant because of the complaints he made about NF and BB, and in turn, cannot establish retaliation.

(2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior liability." *Brown-Baumbach v. B&B Auto., Inc.,* 437 F. App'x 129, 132 (3d Cir. Pa. 2011) (citations omitted). "To state a hostile work environment claim, a plaintiff must plausibly allege that [his] workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive work environment." *Burgess-Walls v. Brown,* 11-CV-275, 2011 U.S. Dist. LEXIS 94087, at *26-27 (E.D. Pa. Aug. 22, 2011). In determining whether the conduct is severe or pervasive, the court must examine the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).

Plaintiff herein alleges "a hostile work environment that arose from BB's continuing pattern of favoritism toward the female employees to the determent of similarly situated male employees." (Am. Compl. ¶ 37). Defendant argues in part that these allegations "fall far short of alleging 'widespread' misconduct" because they give no indication as to the number of affairs BB might have had, whether they were with subordinates, whether they were consensual or coerced, how, if at all, Plaintiff and other comparable males were disadvantaged, whether Plaintiff had first-hand knowledge of any other affairs during his employment, and how all of these things actually affected his employment. (Def.'s Mot. Dismiss at 20).

Relying on *Hopson v. Dollar Bank,* 994 F.Supp. 332 (W.D. Pa. 1997), Plaintiff argues

that BB's pattern of favoritism toward female employees was sufficiently widespread to constitute a hostile work environment based on gender discrimination. (Pl.'s Opp'n at 14). However, Plaintiff's reliance is misplaced because it underestimates the essential element of disparate treatment based on gender. *Hopson* is distinguishable on its facts because Hopson was at least able to identify how his boss's relationships only harmed him and the three other male department heads. Specifically, the facts showed that the men were disadvantaged *because their gender* prevented them from receiving the promotions and salary increases given exclusively to the female department heads in exchange for sexual favors. Although Plaintiff herein has pled his claim to allege language that is nearly identical to the labels in *Hopson*, he has failed to substantiate those claims with any facts showing how he and other males were exclusively disadvantaged *because of their gender*. Instead, Plaintiff merely claims, in pure conclusory fashion:

> BB had engaged in a pattern of affairs with multiple female employees of Defendant over a number of years and took steps to ensure the success of these female employees to the detriment of similarly situated male employees. This continuing pattern of favoritism toward female employees, culminating in BB's affair with NF, resulted in a pattern of gender discrimination and a hostile work environment based on gender discrimination.

(Pl.'s Am. Compl. ¶ 15).[9]

Even assuming the pattern of favoritism alleged by Plaintiff was sufficiently pervasive and regular to satisfy the second element of a hostile work environment claim, the facts nevertheless fall short of establishing that such incidents were in any way related to gender.

---

[9] Again, Plaintiff's "[t]hreadbare recitals of the elements [for the narrow widespread sexual favoritism exception], supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 662.

Here, despite two opportunities to do so, Plaintiff has failed to plead any facts that could

plausibly lead to the inference that he was subjected to gender-based abuse or suffered intentional

discrimination in the workplace *because he was a male*.

"Title VII is not 'a general civility code' and no employee has a right to an idyllic

workplace free from everything bothersome." *McCartney v. Pa. State Police*, 09-CV-01817,

2011 U.S. Dist. LEXIS 83409, at *85 (M.D. Pa. Mar. 3, 2011) (quoting *Oncale v. Sundowner*

*Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). The facts cited by Plaintiff in his Amended

Complaint do not - and cannot - potentially support the existence of a hostile work environment.

*See e.g., Sherrod v. Phila. Gas Works*, 57 F. App'x 68, 77 (3d Cir. 2003) (allegations by an

African American plaintiff that she was "excluded from one meeting, a report was thrown away,

and a colleague told another employee not to listen to [Plaintiff], failed to establish hostile work

environment based on race . . . [as] there is no evidence suggesting that this unreasonably

interfered with her work performance.").

Because the alleged circumstances do not permit the court to "draw the reasonable

inference" that Defendant mistreated Plaintiff *on account of* his gender, his hostile work

environment claim based on "pervasive gender discrimination" shall be dismissed.[10],[11]

---

[10] This Court notes that the cornerstone of Plaintiff's Amended Complaint is the effect of
BB's consensual relationship with NF on Plaintiff's work environment. Aside from the amended
portion making the sweeping allegation that Defendant "took steps" to advance female
employees at the expense of other male employees, there is nothing in the pleading to suggest
that Plaintiff ever witnessed mistreatment or favoritism by anyone other than a single supervisor
(BB) toward a single employee (NF) during his employment with Defendant. In fact, Plaintiff's
Opposition Brief concedes that he was "informed of BB's affairs with numerous female
employees of Defendant by a third party." (Pl.'s Opp'n at 10). Hostile work environment claims
shall be rejected under such circumstances. *See Taylor v. Cameron Coca-Cola Bottling Co.*,
96-CV-1122, 1997 U.S. Dist. LEXIS 12114, at *25-26 (W.D. Pa. Mar. 27, 1997) (second-hand
information pertaining to conduct that was not personally witnessed by a plaintiff shall not be

### b.    State Law Claims

Counts II and III of Plaintiff's Amended Complaint contain State and common law claims alleging retaliation and intentional infliction of emotional distress. Inasmuch as this Court is dismissing Plaintiff's sole federal claim (Count I), it declines to exercise supplemental jurisdiction over the remaining State claims.

---

considered by the court in assessing said Plaintiff's claim of subjugation to a hostile work environment).

[11] In Plaintiff's Opposition to the instant Motion, he alleges that he was subjected to a hostile work environment when NF and BB engaged in a series of adverse and harassing behaviors that "exceed[ed] mere teasing and offhand comments." (Pl.'s Opp'n at 14). In support of this contention, Plaintiff alleges the following incidents: (1) NF made "derogatory comments" that Plaintiff "would not be manager for much longer" and "was on thin ice" (Pl.'s Am. Compl. ¶ 21); (2) NF asserted she would "ensure" that all of Plaintiff's decisions "would be overturned" (*Id.*); (3) NF released some of Plaintiff's "personal information" (*Id.*); (4) BB removed Plaintiff's managerial responsibilities and gave a negative performance review, which is often "the initial step in [the] removal of an employee" (*Id.* at ¶¶ 23-28); and (5) Plaintiff was "constantly questioned regarding his whereabouts [and] vacation time" (*Id.* at ¶ 30). Taken together, Plaintiff argues that these circumstances amounted to a hostile work environment because they made it "impossible for him to supervise his staff and perform his job" while threatening his job and reputation. (Pl.'s Resp. Brief at 13).

Even assuming Plaintiff has alleged behaviors that establish more than "mere teasing and offhand comments," he nevertheless fails to establish the first element of a hostile work environment claim because the facts alleged do not bespeak of any unlawful or discriminatory motive. NF's comments and actions, while arguably hostile, contain no reference to Plaintiff's gender. The questions about Plaintiff's whereabouts and vacation time are likewise gender-neutral. Even BB's allegedly intentional elimination of Plaintiff's job responsibilities falls short of an unlawfully "hostile" behavior because there is nothing indicating that BB singled Plaintiff out for mistreatment *because of his gender* or membership in another protected class. As discussed hereinabove, preferential treatment in favor of a paramour does not violate Title VII. Therefore, BB's alleged behavior fails to implicate an unlawful motive and, thus, cannot support a hostile work environment claim.

## V.    Conclusion

Accepting all factual allegations as true and construing Plaintiff's Amended Complaint in a light most favorable to him, this Court concludes that Plaintiff would not be able to sustain a Title VII claim that could entitle him to relief. Moreover, any attempt to further amend said claim would be futile, therefore Defendant's Motion to Dismiss shall be granted and Count I of Plaintiff's Amended Complaint shall be dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

_____

C. Darnell Jones, II    J.